# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

PARIS DA'JON ALLEN,                                Case No. 0:15-cv-01860-JRT-KMM

               Plaintiff,

v.

RICARDO LOPEZ, SHERLINDA                          **REPORT AND**
WHEELER, KENT                                     **RECOMMENDATION**
GRANDLIENARD, JOHN KING,
TELEPHONE COORDINATING
OFFICER, UNKNOWN
DEFENDANTS, DAVID REISHUS,
SHELLI MONIO, and KIM E. BLING,

               Defendants.

---

Paris Da'Jon Allen, 5730 Olsen Memorial Hwy., Golden Valley, MN 55402, pro se

Kelly S. Kemp and Lindsay Strauss, Assistant Attorneys General, Minnesota Attorney General's Office, 445 Minnesota St., Suite 900, St. Paul, MN 55101, counsel for defendants Ricardo Lopez, Sherlinda Wheeler, John King, David Reishus, and Shelli Monio

---

       Paris Allen was a Minnesota prisoner at the time he filed this case. He seeks to recover damages pursuant to 42 U.S.C. § 1983 from several prison official defendants for allegedly violating his constitutional rights. This matter is before the Court on the Motion for Summary Judgment filed by the Defendants Ricardo Lopez, Sherlinda Wheeler, John King, David Reishus, and Shelli Monio. ECF No. 93. Based on the Defendants' motion and supporting documents, Mr. Allen's written submissions in response to the motion, and on all the files and proceedings in this case, the Court concludes that the Defendants are entitled to judgment as a matter of law and recommends that this action be dismissed.

## THE SUMMARY JUDGMENT RECORD

This case is fairly straightforward. Mr. Allen claims that the Defendants violated his First Amendment right of access to the courts by failing to arrange for him to appear by telephone for a hearing in Hennepin County Conciliation Court. The conciliation court dismissed Mr. Allen's case after he failed to appear.

In September 2014, Mr. Allen was serving a prison sentence in the Minnesota Correctional Facility in Stillwater. *See* Wheeler Aff. ¶ 6, ECF No. 97. On September 4, 2014, Mr. Allen filed a case against two former criminal defense attorneys in the Hennepin County Conciliation Court seeking to recover $3,500 he paid to retain the attorneys and his $70 fee for filing the conciliation court complaint. Strauss Aff. ¶ 3, Ex. 1, ECF No. 98. He accused his former defense attorneys of misleading him about a "deal" and engaging in unprofessional conduct throughout their representation in a criminal case against him from 2002. Strauss Aff. ¶ 3, Ex. 1; *id.* ¶ 16, Ex. 14 (reflecting guilty plea proceedings and sentencing between April and October 2002 in a State criminal case). Mr. Allen's Amended Complaint in this case discusses his former attorneys' allegedly unprofessional and inappropriate conduct during that case, which led to Mr. Allen's guilty plea. Am. Compl. at 1-3, ¶¶ 3-8, ECF No. 27-1.[1] The conciliation court scheduled a hearing on Mr. Allen's case for November 25, 2014 at 8:30 a.m. Strauss Aff. ¶ 4, Ex. 2. The court permitted Mr. Allen to appear by phone and informed him that he was responsible for contacting the Court for the hearing. Strauss Aff. ¶ 6, Ex. 4.

The Department of Corrections transferred Mr. Allen to Oak Park Heights on September 22, 2014. Wheeler Aff. ¶ 6. When he arrived at Oak Park Heights, Mr. Allen was placed on disciplinary-segregation status and housed in the

---

[1]    When the Defendants answered the Amended Complaint, they added individually numbered paragraphs to Mr. Allen's pleading and filed this numbered version of the Amended Complaint at ECF No. 27-1. For ease of reference, the Court cites to this document as "Am. Compl." throughout this Report and Recommendation.

Administrative Control Unit as a result of the events leading to his transfer. Wheeler Aff. ¶¶ 6-7. The conciliation court sent Oak Park Heights a letter informing staff that Mr. Allen had a November 25, 2014 hearing scheduled and asked the facility to arrange to have a phone line available for him to call in to the court to provide testimony. Strauss Aff. ¶ 7, Ex. 5. Though Mr. Allen encountered difficulties serving both of the former defense attorneys who represented him, the conciliation court kept the matter scheduled for November 25, 2014. Strauss Aff. ¶¶ 9-10, Ex. 7-8.

Mr. Lopez was Mr. Allen's case manager at Oak Park Heights. Lopez Aff. ¶ 4, ECF No. 95. After Mr. Allen arrived at the facility, he began asking Mr. Lopez for assistance with his conciliation court case by filing "kites," informal requests raising issues that arise in prisons. *See* Lopez Aff. ¶ 5; *see generally* Reishus Aff., Ex. 1 (kite and grievance forms). Mr. Lopez ran internet searches for Mr. Allen in an attempt to help him locate one of the defense attorneys in Arizona that he was attempting to serve. Lopez Aff. ¶¶ 10-11. Mr. Lopez "never told Allen that [he] would send information to a sheriff's department in Arizona," and correctional officers at Oak Park Heights do not take responsibility for completing service on behalf of an inmate. Lopez Aff. ¶ 12.

Generally, case managers arrange for an inmate to participate in a court call by having the court contact the prison and ask for the inmate's case manager. Lopez Aff. ¶ 15. At Oak Park Heights, Mr. Lopez generally answered calls from the court and then arranged for an inmate to receive the call in the conference room in the Administrative Control Unit, at which point Mr. Lopez would disconnect himself from the call. Lopez Aff. ¶¶ 16, 17. Mr. Lopez knew that Mr. Allen had a hearing on November 25, 2014 and that the court had requested that he arrange for Mr. Allen to call the court to give testimony. Lopez Aff. ¶ 18. Consistent with his practice at the time, Mr. Lopez "assume[s] that after [he] received the letter from the court, [he] called the court and told them the phone number for the court to call to reach Allen" on the date of the hearing. Lopez Aff. ¶ 18.

On November 25, 2014, Mr. Lopez was unable to attend work for personal reasons. Lopez Aff. ¶ 14. Mr. Lopez "forgot about Allen's conciliation court call so

[he] did not tell any DOC employees about Allen's call or arrange for someone else to set up the call for Allen because [he] was dealing with what was going on in [his] personal life on that day." Lopez Aff. ¶ 14. Mr. Lopez admits that he "should have notified [his] fellow case manager to ask him to handle Allen's court call," and he "later learned that Allen was not placed on the phone that day for his hearing." Lopez Aff. ¶ 14. Mr. Allen did not contact other members of the Oak Park Heights staff who were working on November 25, 2014 to ask them to arrange for call with the court. Lopez Aff. ¶ 21-22.

Mr. Lopez next returned to work on December 1, 2014 following the Thanksgiving holiday and realized that he missed setting up Mr. Allen's telephonic appearance. Lopez Aff. ¶ 19. Mr. Lopez called the conciliation court to explain what happened and "[t]he court representative told [him] that Allen had missed the court hearing and that the court was dismissing his case." Lopez Aff. ¶ 19. However, the "[c]ourt staff also told [Mr. Lopez] that if Allen had appeared, the court would have informed Allen that the case would not go forward because he failed to serve a party he was suing." Lopez Aff. ¶ 19. On December 2, 2014, Jessica Rahier, an operations supervisor for the conciliation court, sent Mr. Allen a letter informing him: (1) that Mr. Lopez had contacted her regarding his case; (2) that his case was "stricken" because "none of the parties appeared"; and (3) that he would need to start a new case, and if he chose to do so, Ms. Rahier would "try to get an order waiving the filing fee for [his] new case." Strauss Aff. ¶ 12, Ex. 10.

Mr. Allen contacted the conciliation court after his case was dismissed, and on December 15, 2014, Ms. Rahier sent him a letter providing him with requested statement of claims and summons forms to complete. Strauss Aff. ¶ 13, Ex. 11. Ms. Rahier instructed Mr. Allen that he needed to achieve service and, apparently in response to Mr. Allen's December 12th letter, stated: "[j]ust to clarify, nobody contacted me to cancel your first hearing." Strauss Aff. ¶ 13, Ex. 11. She continued:

> After the hearing, a Mr. Lopez called me and asked what the next step
> could be because, at no fault of yours, you were not able to call in for

your hearing. That is when I told him that you would need to re-file and start over and that I will try to get an order to waive your filing fee when you re-file your claim.

Strauss Aff. ¶ 13, Ex. 11.

Mr. Allen again asked Mr. Lopez for assistance locating one of his former defense attorneys after his conciliation court case was dismissed. Lopez Aff. ¶ 23. Mr. Lopez ran internet searches based on the information Mr. Allen provided him about the attorney and he gave Mr. Allen the information he found. Lopez Aff. ¶ 23. Mr. Lopez told Mr. Allen that he could not guarantee that the man he found was the attorney Mr. Allen was looking for. Mr. Allen asked Mr. Lopez to serve him, and Mr. Lopez again told Mr. Allen that he did not serve people for inmates and that he did not know how to serve someone. Lopez Aff. ¶¶ 23-24. Mr. Lopez denies promising Mr. Allen that he would find out how to serve his former attorney, but did call a police department in Arizona to try and find out additional information. Lopez Aff. ¶ 25.

In a January 15, 2015 letter, Ms. Rahier again informed Mr. Allen that his next step was to re-file his case and that she would try to get the $70 filing fee waived if he chose to do so. Strauss Aff. ¶ , Ex. 12. Mr. Allen sent Mr. Lopez a kite on January 31, 2015, asking him to set up a call with the conciliation court. Lopez Aff. ¶ 26. In the kite Mr. Allen stated:

Legal call to Jessica Rahier at conciliation court to inform her that I'm raising my claim and I'm waiting until Department of Corrections to reimburse the full amount in damages such as $3,584.38 for omission and intentional damages for failing to provide access to the phone 11/25/14 at 8:45 AM, after Ricardo Lopez was warned October 17th 2014. Also can you inform her that the excuse that is used that I filed wrong when I filed correctly and that a referee was waiting on my appearance and Ricardo Lopez called after intentionally & knowing the results of failing to be that officer that was to provide. Can you also tell Ms. Rahier at no fault of hers, "I'm Going to the next step"

Lopez Aff. ¶ 26, Ex. 1. Based on Mr. Allen's request, Mr. Lopez told him that he would need to contact the conciliation court by mail. Lopez Aff. ¶ 26 & Ex. 1. There is no evidence that Mr. Allen ever refiled his conciliation court case.

On several occasions Mr. Allen sent kites and formal grievance forms to Defendants Wheeler and Reishus. *See generally* Wheeler Aff. & Reishus Aff. In one kite, Mr. Allen asked Ms. Wheeler to call his attorney, and Wheeler told him he must work with Mr. Lopez to resolve such issues. Wheeler Aff. ¶ 13. Ms. Wheeler does not remember whether Mr. Allen sent her documents to serve on any defendant in his conciliation court case, but if he had, she states that she would likely have returned the documents to Allen because service of process on behalf of inmates is not among her job duties. Wheeler Aff. ¶ 15. Ms. Wheeler did search the internet to try and locate certain people Mr. Allen asked her to find to avoid having several rounds of kites and responses with him. Wheeler provided some information to Mr. Allen from these searches. Wheeler Aff. ¶ 16. In December 2014, Mr. Allen sent Ms. Wheeler a kite demanding that he be paid more than $3,000 because he missed the conciliation court hearing, but because he had already filed a grievance about the issues, Wheeler informed him that he needed to await a response to the grievance. Wheeler Aff. ¶ 29. In response to additional kites in December 2014 and January 2015, Ms. Wheeler wrote to Mr. Allen to tell him that the Department of Corrections would reimburse him $14.38 he had paid for postage in his conciliation court case. Wheeler Aff. ¶ 32. Eventually Wheeler also offered to have the DOC reimburse Mr. Allen the $70 filing fee if he initiated a new conciliation court case and the judge decided not to waive the fee. Wheeler Aff. ¶ 33.

Allen sent a kite to Mr. Reishus on December 12, 2014, in which he complained that Lopez had caused him to miss the court hearing and that Wheeler, who was Lopez's supervisor, did not adequately handle the issue. Mr. Allen asked Mr. Reishus to investigate, and Reishus told him he should raise the issues with Wheeler because she supervised his case manager. Reishus Aff. ¶¶ 6-7, Ex. 1 at 27-28.

In response to one of Mr. Allen's grievance appeals, the Oak Park Heights Warden at the time, Kent Grandlienard, denied one of Mr. Allen's many grievances over this issue on December 12, 2014. Defendant John King, who was then the Assistant Commissioner of Facilities at Oak Park Heights, *see* Reishus Aff. ¶10, acknowledged that Mr. Allen was not able to make a call on the date of his conciliation court hearing and that this was caused by an oversight. *See* Pl.'s Ex. 5, Side B, ECF No. 105. However, King affirmed the dismissal of the administrative appeal. *Id.*

## DEFENDANTS' MOTION
## AND PLAINTIFF'S RESPONSE

On July 12, 2017, the Defendants filed their motion for summary judgment. ECF No. 93. In support of their motion, they raise several arguments. First, they contend that Mr. Allen failed to assert sufficient personal involvement in the alleged unconstitutional denial of a phone hearing by Shelli Monio, John King, David Reishus, or Sherlinda Wheeler. Defs.' Mem. at 12-16, ECF No. 94. Second, the Defendants argue that his complaint does not allege any violation of the United States Constitution. To the extent Mr. Allen asserts an access-to-courts claim or a due process claim, the Defendants contend those claims fail on the merits. Defs.' Mem. 16-26. Third, the Defendants contend that they are entitled to qualified immunity on all of Mr. Allen's constitutional claims. Defs.' Mem. at 26-27. Fourth, the Defendants argue that all of Mr. Allen's official capacity claims are barred by sovereign immunity pursuant to the Eleventh Amendment. Defs.' Mem. at 27-28. And finally, Defendants assert that the Court should decline to exercise supplemental jurisdiction over any claims asserted under State law. Defs.' Mem. at 29.

In response to the Defendants' motion for summary judgment, Mr. Allen asserts that Mr. Lopez "intentionally refused" to provide him access to a telephone. Pl.'s First Resp. at 2, ECF No. 101. He asserts that Mr. Lopez had a duty to arrange legal calls for him, yet failed to do so, causing his conciliation court case to be dismissed. Pl.'s First Resp. at 4. He argues that Mr. Lopez refused to "provide a legal

call to contact a process server to serve" one of his former attorneys who was named as a defendant in the conciliation court case. Pl.'s First Resp. at 8. Mr. Allen argues that the Defendants are not entitled to immunity because they violated prison policies. Pl.'s Second Resp. at 5-6, ECF No. 103.

Mr. Allen also asserts that Mr. Lopez's supervisors were grossly negligent in denying him access to the courts. Pl.'s First Resp. at 3. He contends that he notified Ms. Wheeler, Mr. Reishus, Ms. Monio, and Mr. Grandlienard of Mr. Lopez's "misconduct," but they "deliberate[ly] failed to act on the information indicating that R. Lopez was violating prison policies [which] caused the violation of [his] right[]" to access the court by telephone. Pl.'s First Resp. at 5. He asserts that Mr. King is "liable after being informed of the violation through grievance appeal and failed to remedy the wrong of intentional deprivation and gross negligence. . . ." Pl.'s First Resp. at 6. He argues that this sufficiently alleges these Defendants' personal involvement in the claimed violation of his constitutional rights. Pl.'s Second Resp. at 3-4.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. When the moving party properly supports a motion for summary judgment, the nonmoving party must present admissible evidence showing that specific facts exist creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wingate Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

# DISCUSSION

## I.   Access-to-Courts Claims

The Defendants argue that they are entitled to summary judgment on
Mr. Allen's access-to-courts claim because: (1) he failed to provide adequate notice of
any constitutional claim in his pleadings; (2) he failed to show an actual injury required
to sustain such a claim or that any Defendant intentionally impeded his access to the
courts; (3) he failed to demonstrate the personal involvement of several of the named
Defendants; and (4) even if there were a constitutional violation, all the Defendants
are entitled to qualified immunity. The Court disagrees with the Defendants' assertion
that they do not have fair notice of a constitutional access-to-courts claim. They are
nevertheless entitled to judgment as a matter of law for several reasons. Mr. Allen has
failed to allege the personal involvement of several Defendants and the undisputed
facts show that Mr. Allen did not suffer any actual injury and none of the Defendants
intentionally impeded his access to court. The Court therefore need not reach the
issue of qualified immunity.

### Fair Notice

The Court has previously construed Mr. Allen's pleadings in this matter to
allege, pursuant to 42 U.S.C. § 1983, that the Defendants violated his constitutional
right of access to the courts. *See* R&R at 12 (Dec. 1, 2015) (Keyes, M.J.), ECF No. 52.
This remains "the most sensible framework for analyzing the factual allegations that
are at issue in this case." *Id.* at 12 n.12. Because Mr. Allen's factual allegations plainly
suggest this analysis, the Court rejects the Defendants' suggestion that they are
entitled to dismissal of this case at summary judgment because they were not provided
adequate notice of Mr. Allen's access-to-courts claim. Defs.' Mem. at 16-17. Indeed,
they have had clear notice for almost two years.

Though Mr. Allen did not plead his claims the same way a lawyer might have—
say by dividing the claims into separate "counts" with headings referencing the
specific cause of action—he adequately stated that the failure to arrange for him to

appear by phone for his November 25, 2014 hearing caused his case to be dismissed. This was sufficient for Mr. Allen, a pro se litigant, to give fair notice to the Defendants of the factual allegations on which his lawsuit is based and allows for those allegations to be considered in the proper legal framework. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) ("[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.").

### Opportunity to Litigate

Because Mr. Allen brings his access-to-courts claim under 42 U.S.C. § 1983, he must show that the Defendants deprived him of a federal right while operating under color of state law. *See Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1426 (8th Cir. 1986). Which specific constitutional provision gives rise to an access-to-courts claim is a matter of some confusion. *See Harbury*, 536 U.S. at 415 n.12 ("Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, . . . the First Amendment Petition Clause, . . . the Fifth Amendment Due Process Clause, . . . and the Fourteenth Amendment Equal Protection . . . and Due Process Clauses."); *see also Earl v. Fabian*, 556 F.3d 717, 726 (8th Cir. 2009) ("Access to the courts is a constitutional right whose basis is unsettled."). Nevertheless, it is "established beyond doubt that prisoners have a constitutional right of access to the courts," that is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).

For a prisoner to prevail on an access-to-courts claim, he must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

> To [show actual injury], the prisoner is required to demonstrate that, as a result of the conduct of prison staff, the prisoner was denied the opportunity to prosecute a claim. . . . It is insufficient to show that this conduct made litigation inconvenient. Instead the prisoner must show that this conduct actually prevented the prisoner from litigating the claim.

*Beck v. Pawlenty*, No. 04-cv-686 (MJD/ JJG), 2006 WL 2506993 at *5 (D. Minn. Aug. 29, 2006) (citing *Cody v. Weber*, 256 F.3d 764, 767-68 (8th Cir. 2001), and *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)); *see also McKenzie v. Fabian*, No. 07-cv-4441 (PAM/JSM), 2009 WL 2982641, at *6 (D. Minn. Sept. 11, 2009) (explaining that actual injury is required regardless of the constitutional provision at issue). To show an actual injury, the prisoner must show that an underlying "'nonfrivolous legal claim had been frustrated or was being impeded.'" *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008) (quoting *White v. Kautzy*, 494 F.3d 677, 680 (8th Cir. 2007)); *see also Bandy-Bey v. Crist*, 578 F.3d 763, 765 (8th Cir. 2009) (explaining that the legal claim must be nonfrivolous and arguably meritorious). "[T]here is 'no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.'" *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988) (quoting *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981)).

The undisputed material facts in the record[2] show that no reasonable juror could find that Mr. Allen suffered an actual injury because he was not prevented from litigating his claim. It is undisputed that Mr. Allen was not able to call the conciliation as had been arraged. However, that is not enough to show that he suffered an actual injury because, taking all the reasonable inferences from the evidence in Mr. Allen's favor, no reasonable juror could conclude that he was denied the opportunity to litigate his case. Indeed, the record shows just the opposite.

---

[2]     Two of the briefs Mr. Allen filed attempt compliance with 28 U.S.C. § 1746. *See* Pl.'s Second Resp. at 8; Pl.'s Mem. of Law in Supp. of Relief at 8, ECF No. 104. Although a pro se party's substantial compliance with § 1746 can satisfy an evidentiary burden in opposing summary judgment, *see Houser v. Folino*, No. 10-cv-0416, 2014 WL 3696130, at *8 (W.D. Pa. July 23, 2014) (observing that a pro se plaintiff's factual averments made in various filings compliant with § 1746 were admissible for summary judgment purposes), Mr. Allen's briefs in this case put no material facts in dispute. In addition, Mr. Allen cannot transform his conclusory statements and legal arguments into genuine fact disputes merely by referencing § 1746.

Mr. Allen appears to argue that he should prevail on his access-to-courts claim because his conciliation court case was dismissed or "stricken" following his non-appearance for the November 25th hearing. But the undisputed facts show that even after the dismissal of his case by the conciliation court, he retained an opportunity to litigate his claims. There is no dispute that Ms. Rahier informed Mr. Allen on behalf of the conciliation court that he could refile his case. She also offered to ask the judge to waive the filing fee should he choose to refile.[3] Nor is there any dispute that Ms. Wheeler informed Mr. Allen that if he chose to refile the case and the conciliation court did not waive the $70 filing fee, the Department of Corrections would reimburse him. Even though refiling his case would have certainly been less convenient for Mr. Allen, proof of an actual injury for purposes of an access-to-courts claim requires a showing that he was actually prevented from litigating. *See Beck*, 2006 WL 2506993 at *5 ("It is insufficient to show that this conduct made litigation inconvenient."). Mr. Allen has presented no facts in response to the Defendants' motion for summary judgment showing that he was actually denied the opportunity to litigate his claims. As a result, the Defendants are entitled to judgment as a matter of law on his access-to-courts claim.

**Failure to Assist with Service of Process**

Mr. Allen appears to also argue that Mr. Lopez, Ms. Wheeler, and Mr. Reishus should have done more to assist him with serving his former attorneys in Arizona in connection with his conciliation court case. *See* Am. Compl. ¶¶ 15-20, 25-26.

---

[3]    In his Amended Complaint, Mr. Allen asserts that after he missed his conciliation court hearing on November 25th, Lopez came to his cell and "lied" to him by telling him that the conciliation court had already agreed to waive his filing fee, when in fact Ms. Rahier had only indicated that she would try to get the court to consider waiving the fee. Am. Compl. ¶ 34. This assertion, even taken as true, is not sufficient to defeat the Defendants' motion for summary judgment because a reasonable juror could not conclude that such a misrepresentation actually prevented Mr. Allen from litigating his claim. The record is clear that he still had the ability to refile his conciliation court case against his former attorneys.

Mr. Allen has pointed to no case law, statute, regulation, or prison policy that requires officials to facilitate service of process in civil litigation and this Court has found no support for such a proposition. As the Supreme Court explained in *Lewis v. Casey*, prison officials are not obligated to affirmatively assist inmates with the filing of every civil lawsuit:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

518 U.S. at 355; *see also Shupe v. Wyoming Dep't of Corr.*, 290 Fed. App'x 164, 167 (10th Cir. 2008) ("In any event, a prison's affirmative duty to assist inmates' access to courts (by, for example, creating and providing access to law libraries) is implicated only by challenges to conviction and matters relating to confinement; as for other legal matters, prison officials need only avoid obstructing inmates' own efforts to access the courts."). Accordingly, the Court concludes that the Defendants are entitled to judgment as a matter of law on any access-to-courts claim based on the alleged failure to do more to help Mr. Allen serve his former attorneys.

### Arguably Meritorious

It is also unnecessary to have a jury decide Mr. Allen's access-to-courts claim because the undisputed evidence shows that his underlying case against his former defense attorneys was not arguably meritorious. As noted above, Mr. Allen's conciliation court case sought to recover $3,500 he paid to his former defense attorneys arising out of their representation in a criminal-sexual-conduct case against him in 2002. Mr. Allen's guilty plea was completed near the end of 2002, but he waited until almost twelve years later to file his conciliation court case. If Mr. Allen was pursuing reimbursement of the fee he paid his attorneys due to their alleged

13

breach of a contract for legal services, that claim was obviously time-barred under Minnesota law. Minn. Stat. § 541.05, subd. 1(1) (setting statute of limitations for breach of contract claims at six years). If instead Mr. Allen was asserting a claim for legal malpractice, that claim would also have been barred by a six-year statute of limitations. *Id.*, subd. 1(5); *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999) ("The statute of limitations for a legal malpractice action is six years.").[4]

Because the case against his former attorneys were plainly time-barred based on the face of Mr. Allen's conciliation court complaint, even if Mr. Lopez or one of the other Defendants had arranged for Allen to be on the phone for the November 25th hearing, his claims were not "arguably meritorious." *See Hansen v. Shaw*, No. 4:07-cv-3086, 2009 WL 113564, at *4 (D. Neb. Jan. 14, 2009) (dismissing the plaintiff's access-to-courts claim where the underlying claim that the defendants allegedly prevented him from pursuing was clearly time-barred by applicable state law) (citing *White*, 494 F.3d at 681).

**Unintentional Conduct**

The Defendants further suggest that they are entitled to summary judgment because Mr. Allen has failed to present any evidence showing that anyone *intentionally* interfered with his ability to litigate his conciliation court case. *See* Defs.' Mem. at 23-

---

[4]    Any cause of action for a contract-based claim would have accrued and the statute of limitations would have started running at the time of the alleged breach. *See Parkhill v. Minnesota Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 956 (D. Minn. 2000). Similarly, a cause of action for legal malpractice would have accrued and the statute of limitations would have started running when damage occurs as a result of the attorneys' alleged negligence. *See Sabes & Richman v. Muenzer*, 431 N.W.2d 916, 918 (Minn. Ct. App. 1988). In either case, based on Mr. Allen's articulation of his claims against his former attorneys, any contractual breach or damage associated with his attorneys' negligence would have occurred when Mr. Allen was allegedly improperly advised to enter a plea of guilty subjecting him to criminal punishment in 2002. Mr. Allen did not pursue any remedy against those former attorneys until far more than six years after the statute of limitations reasonably began running.

14

24 ("Allen . . . cannot establish the requisite injury for an access to courts claim, *i.e.*, that he was actually prevented from litigating his conciliation court case due to intentional actions of Defendants."). The undisputed factual record here permits a reasonable inference that Mr. Lopez acted carelessly or was indifferent to Mr. Allen's appointment when he failed to arrange for Allen to be on the phone with the conciliation court on November 25th. However, aside from Mr. Allen's conclusory assertions that Lopez intended to keep him from making his court appearance, *see, e.g.*, Pl.'s First Resp. at 2-3, there is nothing in the record to suggest that Lopez intentionally prevented him from making his court appearance, and there is no evidence showing that any of the other Defendants played any role in Mr. Allen's failure to appear for the hearing at all. Rather, the undisputed factual record shows that Mr. Lopez missed work on the day of the conciliation court hearing for personal reasons and simply forgot to arrange for Allen to be on the phone with the conciliation court. In fact, Mr. Lopez's efforts to correct his mistake by contacting the conciliation court on Mr. Allen's behalf strongly undermine any suggestion that he intended to prevent Allen from litigating his claims.

To support their argument that a plaintiff must prove a defendant had an intentional motivation to prevent his access to the courts, Defendants cite *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005), and *McKenzie v. Fabian*, No. 07-cv-4441 (PAM/JSM), 2009 WL 2982641, at *8 (D. Minn. Sept. 11, 2009). Defs.' Mem. at 23-24. In *Scheeler*, the Eighth Circuit found that the plaintiffs needed to "show that the defendants acted with some intentional motivation to restrict their access to the courts" in evaluating the First Amendment claim and that they needed to show the defendants acted with deliberate indifference under the Fourteenth Amendment's Due Process Clause. *See* 402 F3d at 830-31. In *McKenzie*, while evaluating an access-to-courts claim, the court stated that the "plaintiff must be able to prove that defendants *intentionally restricted* his access to the courts and that it was the[ir] actions that actually prevented him from litigating his claim with the Minnesota Court of Appeals." *Id.* at *8 (emphasis added).

15

Though these cases generally support the Defendants' position that something more than proof of negligent conduct is required,[5] the Court need not decide whether a showing of negligence can never be sufficient as a matter of law to support a prisoner's access-to-courts claim. Mr. Allen has failed to show an actual injury for the reasons discussed above, and this alone supports summary judgment in favor of the Defendants. Accordingly, the Court recommends that the District Court not reach this legal issue if the other conclusions of law and proposed findings of fact in this Report and Recommendation are adopted.

**Personal Involvement**

The Defendants have also argued that they are entitled to summary judgment on the claims against Ms. Wheeler, Mr. Reishus, Mr. King, and Ms. Monio because Mr. Allen has failed to present any evidence creating a genuine issue of fact concerning their personal involvement in his failure to make his conciliation court appearance. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). A civil rights claimant must demonstrate personal involvement of each named defendant in the alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). In addition, § 1983

---

[5]    Other courts have similarly held that a showing of negligence is insufficient to maintain a § 1983 claim for violation of a constitutional right of access to the courts. *See, e.g.*, *Lopez v. U.S. Sentencing Commission*, 266 Fed. App'x 759, 761-62 (10th Cir. 2008) ("We further note that a plaintiff prisoner alleging the denial of his constitutional right of access to the courts based on a failure to receive legal mail must allege intentional conduct interfering with that mail and actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim.") (internal quotations omitted); *Snyder v. Nolen*, 380 F.3d 279, 291 n. 11 (7th Cir. 2004) ("[A]n allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts"); *Nwaokocha v. Sadowski*, 369 F. Supp. 362, 370 (E.D.N.Y. 2005) ("The constitutional sources of the right of access include the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution . . . . [N]egligence will not suffice to establish a due process violation.").

claims against individual state officials cannot be based on respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Nevertheless, a supervisor may be held liable under § 1983 if his failure to supervise or train an employee caused the constitutional violation at issue. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) ("[A] supervising officer can be liable for an inferior officer's constitutional violation only 'if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'") (quoting *Otey v. Marshall*, 121 F.3d 1150, 1144 (8th Cir. 1997)).

The evidence here only permits a conclusion that Mr. Lopez's conduct could be causally connected to Allen's inability to appear for his November 25th conciliation court hearing. Mr. Allen has not presented any evidence showing that the other Defendants were personally involved in the events leading up to that hearing or played any role in his inability to appear for it.[6] Instead, the evidence indicates that the remaining Defendants did nothing more than respond to Mr. Allen's subsequent grievance forms and other complaints once he had already missed the hearing. *See* Reishus Aff. ¶¶ 6-8 (describing Reishus' responses to internal prison complaints and requests after the alleged mishandling of the conciliation court hearing); Wheeler Aff. ¶¶ 12-13, 17, 31-34 (describing Wheeler's responses to grievances and kites); Reishus Aff. ¶¶ 10 (explaining that Reishus drafted a response to Allen's administrative appeal for Mr. King, who was Oak Park Heights' Assistant Commissioner of Facilities); *see* Am. Compl. ¶¶ 31, 37 (including allegations concerning Monio and King). This evidence is insufficient to allow a reasonable juror to conclude that any of these Defendants personally engaged in conduct that caused Mr. Allen to miss his hearing.

---

[6] The only allegations the Court can discern concerning Defendants other than Lopez are Mr. Allen's assertions that Ms. Wheeler and Mr. Reishus failed to assist him in achieving service on his former attorneys. However, for the reasons discussed above, the constitutional right of access to the courts does not impose an obligation on prison officials to act as process servers for inmates.

They cannot be held liable under § 1983 for doing nothing more than responding to Mr. Allen's grievances and other internal prison complaints. *See Rowe v. Norris*, 198 Fed. App'x 579, 580 (8th Cir. 2006) (per curiam) (agreeing with the district court that the Mr. Rowe's claim against one defendant failed because the defendant's "involvement was limited to denying some of Rowe's grievances, and thus was insufficient to impose liability on him").

Additionally, none of these Defendants can be held liable merely because they held supervisory roles within the Oak Park Heights facility. *See Parrish*, 594 F.3d at 1001. And there is no evidence that any of these Defendants failed to train or supervise Mr. Lopez or that such a failure caused Lopez to fail to arrange for Mr. Allen to contact the conciliation court. *See id.*

Moreover, Mr. Allen did not raise any specific claims against Ms. Monio in his Amended Complaint, and he indicated his intention to dismiss his claims against her and Mr. Reishus in a previous filing. ECF No. 21. In addition to the reasons discussed in above, this further justifies the entry of summary judgment in favor of Monio and Reishus.

Ms. Wheeler, Mr. King, Mr. Reishus, and Ms. Monio are entitled to judgment as a matter of law because Mr. Allen has failed to present any evidence that would allow a reasonable juror to conclude that these Defendants had any personal involvement with his failure to appear for his conciliation court hearing.

**Conclusion**

For all the foregoing reasons, the Court concludes that there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law on Mr. Allen's access-to-courts claim. Because the Court has determined that Mr. Allen's access-to-courts claim fails on its merits, the Court does not reach the Defendants' alternative argument that they are entitled to summary judgment based on the doctrine of qualified immunity.

## II.  Official-Capacity Claims

The Defendants argue that they are entitled to summary judgment on any official-capacity claims Mr. Allen brings against them. The Court agrees. The Eleventh Amendment gives States sovereign immunity from lawsuits seeking damages in federal court. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th cir. 1995). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (citations omitted). As a result the Eleventh Amendment bars suits seeking damages against state officers acting in their official capacities. *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996). Because the Defendants are state employees and Mr. Allen seeks damages from them, they are entitled to Eleventh Amendment immunity for any official-capacity claims he has asserted against them. The Defendants' motion for summary judgment should be granted as to Mr. Allen's official-capacity claims.

## III.  State-Law Claims

The Defendants also argue that the Court should decline to exercise supplemental jurisdiction over any tort claims Mr. Allen has asserted under Minnesota law. *See* Defs.' Mem. at 29. It is not clear that Mr. Allen intended to bring any state law claim in addition to his access-to-courts claim. Nevertheless, if the District Court agrees with the recommendation that Allen's federal access-to-courts claim should dismissed, any state tort claims should be dismissed under 28 U.S.C. § 1367(c)(3). Section 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a [pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to exercise such jurisdiction, we consider the following: (1) the stage of this litigation; (2) the relative difficulty of the state claim; (3) the amount of time and energy necessary for the claim's resolution; and (4) the availability of a state forum. *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 5 F. Supp. 2d 694, 711 (D. Minn. 1998). We should "exercise

judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).

This litigation has been pending for some time. It is difficult to assess what the relative difficulty of resolving the state law claims would be because they are not plainly asserted in the Amended Complaint. Devotion of additional time and energy to resolve any state law claim is not in the Court's interest as there have already been significant resources litigating a fairly straightforward access-to-courts claim. There is no reason to think that Minnesota's courts could not adjudicate any remaining state law claim Mr. Allen intended to bring. Based on these considerations, the Court recommends that any remaining state law tort claim be dismissed under 28 U.S.C. § 1367(c)(3).

## RECOMMENDATION

Based on the foregoing, the Court makes the following recommendation:

1. The Defendants' Motion for Summary Judgment, **ECF No. 93**, should be **GRANTED**.

2. This matter should be **DISMISSED**.

Date: September 27, 2017                *s/Katherine Menendez*
                                         Katherine Menendez
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the

objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.